# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **BANK OF AMERICA, N.A.,** a national banking association, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. : _____ |
| **ANALYTICS, INC.**, a Missouri corporation; | )<br>)<br>)<br>) |
| **CHEMIR ANALYTICAL SERVICES, LLC**, a Missouri limited liability company; | )<br>)<br>)<br>) |
| **AZOPHARMA CONTRACT PHARMACEUTICAL SERVICES, LLC**, a Missouri limited liability company; | )<br>)<br>)<br>)<br>) |
| **ANICLIN PRECLINICAL SERVICES, LLC**, a Missouri limited liability company; | )<br>)<br>)<br>)<br>) |
| **AVIVOCLIN CLINICAL SERVICES, LLC**, a Missouri limited liability company; and | )<br>)<br>)<br>)<br>) |
| **CAS-MI LABORATORIES, LLC**, a Missouri limited liability company, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Bank of America, N.A. ("Bank of America"), a national banking association, for its Complaint against Analytics, Inc. (formerly known as Chemir, Inc.), a Missouri corporation, Chemir Analytical Services, LLC (successor in interest to Chemir Analytical Services, Inc.), a Missouri limited liability company, Azopharma Contract Pharmaceutical Services, LLC (successor in interest to Azopharma Contract Services, Inc.), a Missouri limited liability company, AniClin Preclinical Services, LLC (successor in interest to Amox, Inc.), a Missouri

limited liability company, AvivoClin Clinical Services, LLC (successor in interest to AvivoClin Clinical Services, Inc.) a Missouri limited liability company, and CAS-MI Laboratories, LLC (successor in interest to Chemir and Pra Labs, Inc.), a Missouri limited liability company, (collectively, the "Borrowers"), states as follows:

## Parties

1. Bank of America is a national banking association with its principal place of business in Charlotte, North Carolina.

2. Analytics, Inc. is a corporation organized and existing under the laws of Missouri with its principal place of business in Maryland Heights, Missouri.  Analytics, Inc. was formerly known as Chemir, Inc.

3. Chemir Analytical Services, LLC is a limited liability company organized and existing under the laws of Missouri with its principal place of business in Maryland Heights, Missouri.  Chemir Analytical Services, LLC is the successor in interest to Chemir Analytical Services, Inc.

4. Azopharma Contract Pharmaceutical Services, LLC is a limited liability company organized and existing under the laws of Missouri with its principal place of business in Miramar, Florida.  Azopharma Contract Pharmaceutical Services, LLC is the successor in interest to Azopharma Contract Services, Inc.

5. AniClin Preclinical Services, LLC is a limited liability company organized and existing under the laws of Missouri with its principal place of business in Oxford, New Jersey. AniClin Preclinical Services, LLC is the successor in interest to Amox, Inc.

6. AvivoClin Clinical Services, LLC is a limited liability company organized and existing under the laws of Missouri with its principal place of business in Port Orange, Florida. AvivoClin Clinical Services, LLC is the successor in interest to AvivoClin Clinical Services, Inc.

7.      CAS-MI Laboratories, LLC is a limited liability company organized and existing under the laws of Missouri with its principal place of business in Ypsilanti, Michigan.  CAS-MI Laboratories is the successor in interest to Chemir and Pra Labs, Inc.

## Jurisdiction and Venue

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Bank of America and each Defendant are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Bank of America is informed and believes that no member of any of the Defendants that are organized as limited liability companies is a citizen of or has its principal place of business in North Carolina.

9.      This Court is a proper venue pursuant to 28 U.S.C. § 1391(a) and (c) in that all Defendants reside or are deemed to reside in this judicial district, and a substantial part of the events giving rise to Bank of America's claims occurred in this judicial district.

## Allegations Common to All Counts

10.     Bank of America incorporates by reference the allegations set forth in paragraphs 1 through 9 above as if fully set forth herein.

11.     On or about March 3, 2008, Borrowers or their predecessors in interest executed a certain Amended and Restated Loan Agreement (as amended, the "Loan Agreement") with Bank of America.  The Loan Agreement governs the terms and conditions of certain loans made by Bank of America to Borrowers.  A true and correct copy of the Loan Agreement and its amendments is attached hereto as **Exhibit A**.

12.     On or about March 3, 2008, Borrowers or their predecessors and Bank of America entered into a certain Amended and Restated Security Agreement (as amended, the "Security Agreement").  In the Security Agreement, to secure their obligations under the Loan Agreement, Borrowers granted Bank of America a security interest in all accounts, contract rights, chattel

paper, instruments, deposit accounts, letter of credit rights, payment intangibles, general intangibles, inventory, machinery, furniture, fixtures, equipment, notes, documents, certificates of deposit, securities, and investment property of the Borrowers, whether now owned or after acquired, and all proceeds thereof (the "Collateral").  A true and correct copy of the Security Agreement is attached hereto as **Exhibit B**.

13. Borrowers' obligations under the Loan Agreement were guaranteed by Shri Thanedar, individually and in his capacity as Trustee of the Shri Thanedar Revocable Trust, and by Shri Thanedar LLC.  Shri Thanedar LLC owns certain real property located at 2662-2668 Metro Boulevard and 2672-2676 Metro Boulevard in Maryland Heights, Missouri (the "Metro Property"), from which Borrowers conduct substantial operations.  On or about June 27, 2007, Shri Thanedar LLC granted a deed of trust for the benefit of Bank of America to secure a portion of Borrowers' obligations under the Loan Agreement (as amended, the "Metro Deed of Trust").  The Metro Deed of Trust includes an irrevocable assignment of the rents of the Metro Property.

14. Borrowers failed to make payment of a portion of their obligations under the Loan Agreement when such obligations matured on October 31, 2009.  Borrowers also failed to make certain principal payments that were due under the Loan Agreement on November 30, 2009.  Bank of America gave notice to Borrowers of these and other defaults under the Loan Agreement on or about December 2, 2009.

15. On or about February 26, 2010, Bank of America accelerated Borrowers' obligations under the Loan Agreement and demanded immediate payment of such obligations.

16. On or about February 26, 2010, Bank of America terminated the license of Shri Thanedar LLC to use rents generated by the Metro Property and demanded that any rent payable by Borrowers be paid directly to Bank of America.

17. On or about March 17, 2010, Bank of America demanded that Borrowers Azopharma Contract Pharmaceutical Services, LLC and Avivoclin Clinical Services, LLC (the "Azo Borrowers") surrender possession of their assets that constitute the Collateral to the designee of Bank of America.

## COUNT I – BREACH OF LOAN AGREEMENT

18. Bank of America incorporates by reference the allegations set forth in paragraphs 1 through 17 above as if fully set forth herein.

19. Borrowers have failed and refused to pay the amounts due under the Loan Agreement.  Borrowers' conduct constitutes a breach of the Loan Agreement.

20. As a consequence of Borrowers' breach of the Loan Agreement, Bank of America has incurred damages.

21. As of March 31, 2010, the amount due and owing under the Loan Agreement was $ $26,504,575.56, consisting of $26,279,181.69 in principal and $225,393.87 in accrued and unpaid interest.  Interest continues to accrue on Borrowers' obligations under the Loan Agreement after March 31, 2010 at the rate of $6,021.31 per diem, and Bank of America may have incurred fees and other charges for which Borrowers are responsible under the Loan Agreement that had not been posted as of March 31, 2010.

## COUNT II – SUIT FOR RENT

22. Bank of America incorporates by reference the allegations set forth in paragraphs 1 through 21 above as if fully set forth herein.

23. Borrowers have failed and refused to pay rents otherwise payable to Shri Thanedar LLC for the use of the Metro Property to Bank of America.

24. As a consequence of Borrowers' failure and refusal to pay such rents to Bank of America, Bank of America has incurred damages.

25. Bank of America is entitled to a judgment against Borrowers in an amount to be determined at trial.

### COUNT III – TURNOVER OF COLLATERAL BY AZO BORROWERS

26. Bank of America incorporates by reference the allegations set forth in paragraphs 1 through 25 above as if fully set forth herein.

27. The Azo Borrowers have failed and refused to turn over the Collateral to Bank of America's designee.  The Azo Borrowers' conduct constitutes a breach of Section 6(g) of the Security Agreement.

28. Pursuant to § 400.9-609, RSMo., Bank of America is entitled to possession of the Collateral following a default and may obtain possession pursuant to judicial process.

29. Bank of America is entitled to a judgment directing the Azo Borrowers to turn over the Collateral to Bank of America's designee.

### COUNT IV – APPOINTMENT OF RECEIVER

30. Bank of America incorporates by reference the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein.

31. Section 6(l) of the Security Agreement provides that, upon default by Borrowers, Bank of America may "[h]ave a receiver appointed by any court of competent jurisdiction to take possession of the Collateral.  Each [Borrower] hereby consents to the appointment of such a receiver and agrees not to oppose any such appointment."

32. Pursuant to Federal Rule of Civil Procedure 66, this Court is empowered to appoint a receiver in the circumstances of this case.

33. A receiver is just and necessary to keep and preserve Bank of America's security interest in the Collateral for the following reasons:

(a) Borrowers agreed to the appointment of a receiver in the event of a default pursuant to the Loan Agreement;

(b) Bank of America lacks other good and sufficient security from Borrowers to further secure the Loan Agreement;

(c) Borrowers are in default under the Loan Agreement, and there is no cure of said default in prospect;

(d) Bank of America has a vested interest in the efficient operation of the business of Borrowers, so as to manage, protect and preserve the Collateral;

(e) Borrowers lack funding to maintain the Collateral, and Bank of America is legitimately fearful that its Collateral has been, is, and will continue to be consumed, used, or dissipated without the appointment of a receiver;

(f) Bank of America has no adequate remedy at law and requires equitable relief to protect its interests in the Collateral, to keep, preserve, and maintain the Collateral, and sell or dispose of the Collateral, subject to Court approval.

34. Absent the appointment of a receiver to take control of the Collateral and to enforce all rights of Bank of America in said Collateral, Bank of America will suffer irreparable injury and loss.

35. Morris-Anderson & Associates, Ltd. is engaged in the business of working with and marshaling the assets of insolvent and troubled companies and is prepared to act as receiver upon this Court's appointment.

36. Bank of America seeks appointment of Morris-Anderson & Associates, Ltd., a suitable and capable firm, to serve as receiver of the Collateral.

WHEREFORE, Bank of America prays for the following relief:

(a) that lawful process issue to bring Borrowers before this Court;

(b) that judgment be entered in favor of Bank of America and against Borrowers in this action;

(c) that Bank of America be awarded the sum of $26,504,575.56, plus interest from March 31, 2010 at the rate of $6,021.31 per diem and fees and other charges owed under the Loan Agreement, against Borrowers, jointly and severally, on Count I;

(d) that Bank of America be awarded a sum to be determined at trial against Borrowers on Count II;

(e) that on Count III, the Court direct the Azo Borrowers to turn over the Collateral to Bank of America's designee;

(f) that on Count IV, the Court appoint Morris-Anderson & Associates, Ltd. as receiver of the Collateral, other than collateral turned over to Bank of America's designee in connection with Count III, with the power to perform all acts necessary to protect and preserve the Collateral (including but not limited to conducting business operations and selling the Collateral free and clear of liens and other claims);

(g) that Bank of America be awarded its attorneys' fees and costs incurred in connection with this action; and

(h) that Bank of America be awarded such other and further relief as the Court deems just and proper.

This 1st day of April, 2010.

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ Brian C. Walsh
Lloyd A. Palans, #22650, #4024
Brian C. Walsh, #58091, #371828
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Phone: (314) 259-2000
Fax: (314) 259-2020

Attorneys for Bank of America, N.A.